May it please the Court. Your Honor, this is a situation where two crucial aspects of the right-to-do process were deprived of my client. Those being the right to have notice and the second being the right to confront and cross-examine any witness against my client. Now, the panel requested that we review and be prepared to argue the case of Sanapien v. Holder prior to coming here. And in my opinion, I think that case is directly on point with the situation here. Were you aware of that case before we sent out that notice? Your Honor, to be honest with you, no, I was not. I'll ask the government the same question. You should, just before argument, go back and look and see if there are any new cases, and then you send us a letter under 28J. Thank you, Your Honor, and I will do that as well, because I do believe that that case is directly on point. In that case, though. Just remember, we don't miss anything. I can see that. If that case dictates a remand in this case, is there a need for the Court to reach the other issues? Well, I think there are other issues in the case. For instance, the immigration judge at the time of the hearing pretty much dismissed all other evidence, all other documentation that was submitted by the immigrant. He basically admitted but gave no weight to various police summonses, testimony of the immigrant, and admitting and giving no weight is essentially akin to not admitting the evidence if you're not giving it any weight. So I think while most of this case, most of the credibility, determination, and stems basically trickles down from the initial report that was given, that the judge after that chose to use that report to not believe anything that was said by the respondent. He said, well, because I'm not accepting the authentication method used by the respondent in terms of his testimony is now not being believed by the judge. So there's a whole litany. Basically, the entire case was dismissed by the judge or was not considered by the judge. The entire testimony of the respondent was not or the petitioner was not considered by the judge. And it all stems from that initial report, the initial report that said that, well, this is a fragile document. And the report was written by the head physician of the hospital. No name was given for the physician, just the head physician. And the report stated that in a written response to our inquiry, the head physician said that this is not, this document is not the type that we use and there's no doctor of such. His name, the name, the person who wrote the report is nowhere on there. And obviously, it's conceded that hearsay is allowed in immigration hearings. But this is a case of double hearsay. This is a case of somebody prepared a report, prepared a letter that he sent back to the, to the investigative officer. The investigative officer then prepared a report that said that I read this thing and he said that this document is fake. And if the judge chose to not accept the authentication method of the respondent because he didn't, he didn't give it much weight, because he didn't think it was trustworthy, then how could he accept this report that, granted, it's got a symbol from the United States government right on the top of it on this letterhead, but from an officer that wasn't available to testify on a cross-examination, that the actual author, the source of the report was never given. It was just a letter from the head physician. And so there are other issues in the case because while the judge decided to be dismissive of all the other evidence in the case, I think that stems from the fact that this report was there. Because had the judge, had this report come back and said that this evidence was proper and it was, it was actually a real document that was submitted by the, by the immigrant, then the judge would have said, well, then I believe the testimony of the respondent. I think the authentication method pursuant to Ninth Circuit rules is also, is also proper. So now I assume that the government is going to argue that if we assume credibility, now, of course, we don't have a finding of credibility, but if we remand under Sinapian to ask the IJ to reevaluate credibility after there's been an appropriate opportunity to challenge the report that comes in, the BIA, the IJ and then the BIA both say, assuming credibility, nonetheless the ill treatment that he suffered didn't rise to the level of persecution, therefore he doesn't get the presumption. How will you respond to that argument? Well, the respondent was arrested several times, and according to his testimony, he was beaten in police custody. He was deprived of liberty. The BIA mentioned that and the IJ mentioned that there was no injuries to the immigrant. Well, I don't know if there's a requirement for a physical injury to occur in order for I don't see that statement in the BIA's I believe it may have been the judge's order, Your Honor. But either way, there's documentation. Well, but if he's telling the truth, he did suffer an injury. That's why he's in the hospital. That's correct. So I'm saying even assuming he's telling the truth, which is what the IJ said, and then the BIA says, assuming he's telling the truth, doesn't say there was no injury. So let's assume he's telling the truth, including as to the injury. Is the BIA simply wrong that this does not rise to the level of persecution? Our position is yes. Our position is that it does. Do you have other cases that tell us that this level of mistreatment rises to the level of persecution? Your Honor, I think the cumulative effect of persecution, I think, and that's was it Corbellino v. Older? I apologize, Your Honor. I don't have the exact case to cite. But this Court has said in numerous cases that the cumulative effect of persecution can be weighed and past persecution rising to the level of the granting of asylum can be found. In this context, one of the things that the judge found was he was dismissive of all of the other testimony of the immigrant and said that it doesn't rise to the level of persecution. Why? Because I don't believe what he was saying. See, this all stems, this entire decision of the immigration judge stems from the negative credibility finding. If the judge had found him credible, then he would have had no choice but to grant asylum because he would have had to conclude that the statements of the responder by ending up in the hospital, ending up in detention for several days, and all of this the war in Chechnya, all of this is a result of this. And all of this does rise to the level of persecution. The reason they found no persecution, no past persecution rising to the level of granting asylum is because of the credibility finding. You know, that's not true. Or I'll say it this way. The I.J. very explicitly says even assuming it is true there is no past persecution, then I have to say the I.J. calls the so-called indicating in that section his skepticism. But the BIA flatly says even assuming it is true. Now, at some deeper psychological level, you may be telling, you may be right in the sense that the words say something different from what the underlying feeling of the BIA is, that it's nonetheless influenced by the fact that it doesn't believe him. But analytically on the surface of it, the BIA is very clear in saying even assuming he is telling the truth, this does not rise to the level of persecution. Well, then our opinion is that it does. No, I got that. If there's enough to put him in the hospital and enough to keep him in custody for several days without charges being filed, then that should rise to the level of persecution as well. And if it pleases the Court, I would like to save the remainder of my time for rebuttal. Good morning, Your Honor. May it please the Court. My name is Jacob Asher. I'm here on behalf of the Attorney General of the United States. Substantial evidence in the record does support the adverse credibility finding in the case. And I would like to argue that Sinopion is distinguishable from the incident case because the Sinopion decision involved the forensic report compiled by the government's forensic expert who actually was in the United States. And the Court's discussion of Sinopion, one of the reasons given was that the degree of certainty with which the documents submitted in Sinopion, which was, I believe it was a copy of the birth certificate as well as the certificate from a church in Iran, it was really important to find out whether that degree of certainty went all the way to the level to find that the documents submitted were counterfeit. In the incident case, we have an investigative report compiled by a government official in Moscow. The report basically is very similar to I-8213, which is a record of a deportable admissible alien that they routinely use in immigration proceedings. The government basically had only ministerial duties by accepting the request from DHS. Is it possible the government made a mistake? Your Honor, this is a very close case. No, I'm asking you a question. Is it possible the government made a mistake? There's a possibility. And given the possibility that the government made a mistake, and here I'm casting no aspersions on the government. People make mistakes. Yes. Given the possibility that the government made a mistake, it does seem wrong that there's no opportunity for the other side to point out how the mistake might have occurred and so on, instead of it comes in, they see it at the last minute, and the I.J. says, well, you can't challenge it. That just doesn't make sense to me. Well, Your Honor, I agree with your position that it would not make sense in the case of the State of New York. You have an ailing who made attempts to authenticate the evidence himself. Here we have the ailing who indicated that he was not going to authenticate the evidence. He submitted documents from a foreign country. And if I can direct your attention to page 40 of the administrative record, he said that I'm not going to authenticate the record the documents submitted. So the government went ahead and had to send the documents to its investigator, and it took four years. Now, he gave a reason why he wasn't going to do anything to authenticate it beyond saying that this is what he received and that his parents had it and his parents sent it to him. Now, in one level, of course, that's authentication. We have his testimony, his chain of custody, and so on. What he's saying is I'm not going to authenticate it further, and he says that because if I were to do it, it would place me and possibly my family members in some danger. He said it was difficult. And he said that he was just going to submit the translation in light of the situation in his country. And then he said I'm not going to authenticate it. All right. So, well, but then we have a situation where we would allow applicants for relief, asylum relief, to submit unauthenticated documents and ask for discretionary relief from the attorney general. And I would like to point out that the document that was the investigation which was conducted by the SAS in Moscow indicated they complied with the confidentiality regulations, which is very important. So the question is that the information that was provided to the hospital and then the answers that were received, we can actually infer from what kind of questions were asked. Number one, to ask whether the form of the document was something that usually routinely issued by the hospital, and the hospital said the form provided by Petition in this case does not match with the existing form on the record. Number two, whether there's doctor of honor, which is very important. There's no doctor of honor. And number three, whether there is any evidence that this individual was treated at the hospital. Now, I noticed that they changed the number of the hospital so that the report that comes back says, well, it's formerly known as X. Is it possible that polyclinic number 26 still is polyclinic number 23? And so they're now sending to the wrong one. So when the doctor comes back and says, well, we don't have anybody by that name, well, we should have been a 23 or 26. It's a possibility. But I would like to point out that it is definitely a possibility. I would like to point out that it says formerly municipal clinic number 23. I know. I read that. That's why I'm asking you the question. I agree it's a close call case. It's just definitely there's a possibility that there was a mistake, and definitely a possibility that in this Ninsen case, the government, there might have been a mistake. But we have here a report, actually, that the official identified that polyclinic number 26, and he pointed the parenthesis out. It was 23. So unless that Petitioner produces any evidence that would show that the document is untrustworthy. Well, let me ask you this, Counsel, because Synapian really has to do with the right to a fair hearing and the fact that you can't spring a report on somebody at the last minute, not allow cross-examination. That's a due process violation. So regardless of the strength of the report, there's still a fundamental right to due process here. So I'm not sure I understand your argument as to how your case is really distinguishable from Synapian. Are you saying that there is a due process violation, but that somehow it's harmless? Well, in Synapian, the government had a report way before. It was, I believe that was one of the inferences in Synapian, that way before it was provided to the Petitioners, and they actually, it was the first time presented in the court, which is similar to the same situation here. But the difference is that we don't know at what point the government in the Ninsen case received the report from Moscow. So we might, and that's something that I was thinking that makes this case different, because they might have gotten their report on the same day. They might have gotten the report the day before. So it's not something that was found on the record by the Ninsen case. Well, that may be. Let's say the government did get it just the day before the hearing, brought it before the IJ, gave it to the other side, and the other side did ask for a continuance in this case and say, wait a minute, now I'm surprised by this. Can I have a continuance? I'd like to investigate or study the report further, cross-examine the author, which the government didn't produce in this case. Isn't that still a due process violation under our prior precedent? Well, it would definitely indicate that there is an issue with FAIR, that the Petitioner in the Ninsen case might have been denied a FAIR hearing. But in the context of of course we have to look in the context, right? So the question is, why is it that the Petitioner in the Ninsen case, he said that I'm not going to authenticate. It took four years to get the investigation done, where the rest of the evidence was still unauthenticated and where he then said at the hearing, he said, well, please give me a continuance so that I can authenticate the evidence and I can find out as to what's going to happen if we can send our investigators. So the question is why it wasn't possible before and it's possible right now. And in light of the fact that there are other issues with the credibility, which is omissions, inconsistencies and a vague testimony on the record, so that's something that probably made the IG believe that this case, even though there might be an issue with the government not submitting the evidence when it probably should have not notified the Petitioner in advance about the evidence, right? It indicated that perhaps that the fact that he submitted a forged report undermined his evidence, his summons, the school certificate, as well as his inconsistent testimony, basically. But that all goes back to, is this hospital document a genuine document? If I were the government and I were trying to present as convincing a case as I could to a potentially skeptical IJ that this was a fraudulent document, I would not submit merely this one-page summary from the U.S. official in Moscow. I think I would submit the letter of inquiry that I sent to the clinic. I think I would submit the letter I received back from the clinic instead of just a little bullet point, well, nobody here by this name, we don't use this form. Why do you suppose the government didn't provide that additional information? Your Honor, I'm not privy to, I cannot spec. I mean, my guess would be as good as yours. I cannot say that. I'm not even suggesting bad faith, but I'm suggesting this is pretty quick and dirty. Well, Your Honor, I would say that they could have done, in this case, they could have done more and dispelled the issue that might come up eventually. But it might give somebody skeptical of it coming back more ammunition or at least more basis in which to figure out, well, is this reliable or not? Because I want to see the questions that were asked of the doctor. I want to see the response the doctor gave instead of this sort of three-line bullet point summary. Well, Your Honor, as I said, it's a close call. I mean, they sent out that information. I mean, they might have, what you just said. When did the government receive that summary? Your Honor, it says that the report was produced on October the 18th of 2006, and the record and the record. That's in Cork? No. We don't know when the court, when the government received this report, meaning when it was sent to DHS office in Los Angeles. We don't have that on the record. What we have is that when the report was compiled. Well, when did the government receive the report? Your Honor, I. They don't stamp? I mean, it doesn't say on the record when they did, when they received the evidence that they offered in the court, which is also one of the issues in the case as to when, as to whether they produced, whether they had it. Well, does the government have any evidence as to when that report was received? Not. Well, I don't see it in the record. I mean, my review of the record revealed that there's no stamp. I mean, I'm looking at the report, and I don't see any stamp. And there was not, there was no testimony on the record from, that would indicate it was received on a certain date, and when they knew about the report and when they were supposed to submit it to the Immigration Court or produce it to. Well, when those documents are received, aren't they logged in? Well, Your Honor, there is a presumption of irregularity, and I assume that that's what probably happened, but we don't have an instant record. I cannot speculate as to when the report was logged in, when it was received, and what happened to the report after it was received to Moscow. Well, what I can tell is that I've got a date of report of investigation on the 18th of October in 2006. Yes, Your Honor. And the hearing in which relief was denied is July 2007. July.  That's correct, Your Honor. Which suggests to me that the government had this for a while. I mean, if the date of the report is October 18, 2006, and the hearing is July 2007, either the mail is really slow from Moscow, or they had it for a while. Well, it took the government a while to submit the report in the first place. If you look at the date of the report, it was sent on, I believe, April the 3rd, when it was received by USCIS in Moscow. But I'm reading AR 218, which is the report that was introduced in evidence. That has a date on it. That date is October 18, 2006. What I was trying to say is that perhaps the mail is really slow, or the way the government couriers, the way they work, it's, you know. Well, I want to point out that the date when the Moscow, the office in Moscow, received the report was April the 3rd, 2006, but the request for an investigation was made, I believe, in May of 2005. So it took them a while even to get the report. No, you're not taking my point. The date of the report that says this is fraudulent, that date is October 2006. Yes. The hearing in front of the IJ is July 2007. It seems to me likely that the government lawyers here had the report dated October 2006, some months before the July 2007 hearing. Perhaps. But as I said, we don't have anything in the record to indicate that. Other than those dates. Well, the dates, yes. The dates indicate that there was definitely a gap of time, significant gap of time between the report when it was compiled and when it was actually received by, well, sent into the record. Yeah. So that casts doubt on the authenticity of that report, I would think. Well, how would it cast doubt on the authenticity of the report if it's official government law? Well, the whole thing seems irregular to me. Well, there are issues with the way that the government gets a document, apparently, and asks for it. We don't know when it was received. It was sent from Moscow, what, in October of the year before the hearing was held? Well, the fact that the government was slow in conducting its investigation does not mean that somehow they produced the document. No, from the date of the report. It was slow in providing the result of the investigation. Well, it was definitely, yeah, there was an issue with providing the report. And then the applicant gets the report during the hearing. But there is no evidence that the report is untrustworthy. So we can, I mean, the fact that they were slow in providing the report does not. That sort of smells a little, doesn't it? Well, at what point. Why give it to them at the hearing? At what point does it cross the line? So if somebody is slow in getting some sort of a benefit or some sort of documentation, it does not mean the document from the government or a report from the government is untrustworthy. The fact is that somehow there might be an issue with getting the report to Moscow and from Moscow and providing the information to a petitioner's counsel does not mean the report in itself is untrustworthy. So the issue is, the fact is that perhaps it would be in the best interest if the government should have produced the report and given it to a petitioner's counsel to petition away before the hearing. And as I said, you know, in the context of what happened, we don't really know when they received the report. And as Judge Fletcher pointed out, we don't have the information. Well, there is some sort of information with respect of logging evidence when the government receives it. We don't have that log. We don't have that. Okay. Let me ask you one last question. Were you aware of the Sanapian case before you received our order on Friday? Your Honor, I was aware, but in a different context, in the context of Obamagi and Bora, actually, dealing with the issue of asylum, timeless asylum applications. It was Hakopyan and Sanapian, two cases that I've – but I wasn't thinking about this case in the context of this particular situation because it kind of didn't cross my mind that the forensic report and while there is a due process and prejudice issue, it didn't cross my mind. Yeah, yeah. A 28-J letter might have been helpful. Okay. I apologize. Well, I would just like to say that even if – assuming credibility of petition in this case, the Court should still find that substantial evidence supports the Board's decision that there was no past persecution and well-founded fear of future persecution and affirmed any justice decision on that ground as well. What he says, his testimony, and his side of it, and with Chechnya and the different organizations that were involved, it seems to have a ring of authenticity, doesn't it? Well, I mean, assuming his credibility, the question is whether the harm he suffered in his native country on account of his opposition to war in the Chechen Republic would rise to the level of persecution. Assuming that he was credible, the harm that he suffered did not rise to that level. So that's the government's position in this case because, I mean, while he was detained and he was being given custody, assuming that's true, I mean, taking by itself that brief detention and beating and other things that he might have experienced, such as harassment, was not sufficient to meet that standard for past persecution. If the panel has no further questions, I would like to submit an argument and the government's brief. Thank you. Thank you. Any rebuttal? I just appreciate your argument. I should say that, from my experience, it is common practice in Los Angeles Immigration Court that when a report of this nature is made available, that the government counsel does not make it available until the date of the merits hearing. Generally, if that report is negative towards the immigrant, most judges will grant the continuance for that purpose, and the purpose generally would be to investigate the investigation. I have in the past sent emails to the consulate requesting sort of like discovery requests, requesting exactly what the court was inquiring about, how they came to the conclusion that they did, how did they do this investigation. It's also a possibility to hire a private investigator to go in and do the same exact investigation that this government investigator did, to, again, investigate the investigation. That's something that the petitioner was not given the right to do. Furthermore, as far as the detention and persecution is concerned, the immigrant was held in custody for four days. There was no charge brought against him. He was merely arbitrarily held for four days, during which span he was beaten. That, in our position, very much rises to the level of persecution, and as such, this case is eligible for the granting of asylum in the event that the court wishes the – if the court finds him credible. Thank you for your time, Your Honor. Did you just tell us that when the government has an investigation, it doesn't give the applicant a copy of the report until the time of the hearing? That's the usual practice. It is the usual practice, and then if that report is negative, the judge will give a continuance to allow for an investigation, because how can you – a report of this nature is damning to the case. If you have this report, the case is essentially over, because with a false document, how can you ask the judge to then believe everything else that the petitioner is saying? So in that sense, then we're given the opportunity, sometimes because of the long delays and continuances in immigration court, sometimes over a year, to then do our own investigation, submit our own documentation, and then cross-examine the author of the report to see how he came about the conclusions contained in the report. So, yes, it's common practice, even though we request the report when – what normally happens is there's a master calendar hearing when there's documentation out for either forensic laboratory or overseas investigation, and the government will say, well, the report is not ready, and then there'll be a continuance. Then, finally, when the government will say, well, the report is ready, and the judge will set it for a merits trial hearing. Now, at that hearing, we will say, well, am I able to see a copy of this report, and generally the answer is no, at which point we deal with what happens at the merits hearing as it comes. If there's no more questions, Your Honor, I will stop. So when do you – so you ask for a copy, and the answer is no?  So you never see a copy. Generally, no. Like I said, generally it's given to us at the merits hearing, at which point that's when we read the report as, you know, you're on the record when you're reading the report. There's no – there's not even a 10-minute recess to review it. Read the report. If it says negative, then you argue as fast as you can for a continuance, and that's the reality of how it works. And do you get those continuances routinely? Generally speaking, yes. It would just be – like I said, it's due process. It would only be fair to then grant the continuance when you have a report that you submit voluminous documentation to the report, various summonses and medical certificates, which are very hard to come by from overseas, and then you have a two-page report that basically knocks you out of the water. So, yeah, I mean, the fair ruling would be to allow us time to do so, and most judges will. In this particular case, that did not happen. All right. I just asked counsel for the government. Is that the way it works? Huh? What? It's the first time actually I'm hearing that, so I cannot say that I'm aware of it. Well, it would be a good thing to report to your boss, the attorney general. I mean – Well, I mean, as I said, you know – Seems like it. We cannot – I mean, unless – I mean, counsel's testimony is not evidence, but our petitioner's counsel – I'm not saying that he's not being credible, but as I said, you know, the government at this particular point, I have no idea as to how they did things in the Los Angeles immigration court. So you've got a weak case with all kinds of problems. Well, I mean, if that's the court's view, that's – No, I mean – We've got – Okay. Thank you for your time. Yeah. Well, this matters.
judges: Pregerson, Fletcher, Nguyen